UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DESIGNER DIRECT, INC. D/B/A LEVIN ASSOCIATES,<br><br>Plaintiff,<br><br>v.<br><br>PNC FINANCIAL SERVICES GROUP, INC., *et al.*,<br><br>Defendants. | Case No. 17-cv-7345<br><br>Judge John Robert Blakey |

# MEMORANDUM OPINION AND ORDER

Plaintiff Designer Direct, Inc. is the unfortunate victim of bookkeeper fraud. Its former employee forged thirty-nine checks from its business account between October 2016 and May 2017, when Plaintiff finally discovered the fraud. Plaintiff now sues Defendants PNC Financial Services Group, Inc. and PNC Bank, National Association (collectively, Defendants) for breach of contract, alleging that Defendants breached their account agreement by failing to exercise ordinary care in paying the thirty-nine checks. [1-1]. Defendants move for summary judgment. [18]. For the reasons explained below, this Court grants Defendants' motion.

## I.   Background

The facts in this section come from Defendants' statement of facts [20].[1]

Plaintiff, an Illinois corporation, has a demand deposit account with Defendants. [20] ¶¶ 1, 4. Stephen Rebarchak, Carl Diller, and Kerry Levin are

---

[1] This Court also reviewed Plaintiff's statement of additional facts [23], but finds those facts immaterial to its analysis.

1

authorized signers on the account. *Id.* ¶ 5. Plaintiff claims that between October 5, 16 and May 4, 2017, its office manager, Kristiana Ostojic, forged Rebarchak's signature on thirty-nine checks drawn on the account. *Id.* ¶ 10. Ostojic made each check payable to herself or a company called KO Development. *Id.* In the aggregate, the checks totaled $185,421.94. *Id.*

Ostojic deposited the checks at either US Bank, N.A. or JP Morgan Chase, and presented them to Defendants for payment. *Id.* ¶ 11. Defendants say they processed and paid the checks in the normal course of business through their automated check processing system. *Id.* ¶ 12. Defendants then mailed account statements to Plaintiff each month from November 2016 through April 2017; the statements identified each check by date, check number, and amount. *Id.* ¶ 13. Defendants also included copies of the checks with each account statement. *Id.* ¶¶ 14–15.

Rebarchak reviewed the statements, but not the copies of the checks because Ostojic removed the online versions of them before Rebarchak could see them. *Id.* ¶ 16. Rebarchak testified that Ostojic's fraud became immediately apparent to him once he finally looked at one of the checks in May 2017. *Id.* ¶ 17. Plaintiff first notified Defendants of unauthorized signatures on the account in May 2017. *Id.* ¶ 24.

The signature card for the account, which provides the account's authorized signers, states that by signing the signature cards and using the account, Plaintiff agrees to the terms of Defendants' "Account Agreement for Checking Accounts and

2

Savings Accounts," "as well as other terms and conditions that may apply" to its account. *Id.* ¶ 6; [20-2].

Defendants say that two account agreements applied to Plaintiff's account between October 5, 2016 and May 4, 2017: (1) the Account Agreement for Business Accounts effective June 26, 2016; and (2) the Account Agreement for Business Accounts effective April 23, 2017 (collectively, the Account Agreements). [20] ¶ 7; [20-3]; [20-4]. Both Account Agreements provide, in pertinent part:

> Our duty is to use ordinary care in examining checks when they are presented to us for payment. . . . We shall be deemed to have exercised ordinary care if we process your checks only by automated means or if any unauthorized signature, counterfeit check or alteration could not be detected by a reasonably careful examination of the item. . . .
>
> We will make available or send a monthly statement to the last address that you have specified for your Account. This statement will list all activity that relates to your Account during the statement period and any other information required by law. Upon receipt, you should review your statement carefully. . . . IN NO EVENT WILL WE BE LIABLE FOR ANY UNAUTHORIZED TRANSACTION OR ANY FORGERY, UNAUTHORIZED SIGNATURE OR ALTERATION OF AN ITEM ON YOUR ACCOUNT THAT IS NOT BROUGHT TO OUR ATTENTION WITHIN 90 DAYS OF THE DATE ON WHICH YOUR STATEMENT OR REPORT WAS RECEIVED OR MADE AVAILABLE TO YOU.

[20] ¶¶ 7–8; [20-3] at 2, 4–5; [20-4] at 5, 8.

## II.   Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the

3

burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The non-moving party has the burden of identifying the evidence creating an issue of fact. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. Analysis

Defendants move for summary judgment upon the basis that the Uniform Commercial Code (UCC) bars Plaintiff from recovering on its breach of contract claim. [19]. This Court agrees for the reasons below.

### A. UCC Section 4-406

In Illinois, the UCC governs the relationship between a bank and its customer. *Napleton v. Great Lakes Bank, N.A.*, 945 N.E.2d 111, 114 (Ill. App. Ct. 2011).[2] Section

---

[2] The parties agree that Illinois law applies to Plaintiff's claim. *See* [19] at 5–13; [21] at 2–8.

4

4-406 of the UCC, titled "Customer's duty to discover and report unauthorized signature or alteration," provides in relevant part:

> (a) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment. . . .
>
> (c) If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.
>
> (d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection (c), the customer is precluded from asserting against the bank:
>     (1) the customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and
>     (2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.

810 ILCS 5/4-406(a), (c), (d).

Section 4-406 clearly defines a bank customer's responsibility to examine its account statements and promptly discover and report unauthorized payments. *Napleton*, 945 N.E.2d at 114. Accordingly, Section 4-406 precludes a customer from

5

asserting an unauthorized signature if it failed to examine the bank statement with "reasonable promptness." *Falk v. N. Tr. Co.*, 763 N.E.2d 380, 383 (Ill. App. Ct. 2001).

### B. Section 4-406(d) Bars Plaintiff's Claim

The parties agree that Defendants provided Plaintiff with account statements for each of the thirty-nine checks at issue; the statements described each check by item number, amount, and date of payment. [20] ¶¶ 13, 15. Thus, Defendants complied with their duties under Section 4-406(a). Defendants' compliance therein triggered Plaintiff's corollary duty under Section 4-406(c) to "exercise reasonable promptness in examining the statement" in order to discover and promptly report any forgery to Defendants.

While the UCC does not define "reasonable promptness," parties can fix time limits by agreement. *Reliance Ins. Co. v. Bank of Am. Nat. Tr. & Sav. Ass'n*, No. 99 C 3366, 2001 WL 62597, at *4 (N.D. Ill. Jan. 25, 2001); *Napleton*, 408 Ill. App. 3d at 452. The Account Agreements applicable to Plaintiff's account provided that Plaintiff had ninety days from the date Defendant made each account statement available to report any unauthorized transaction or forgery. [20] ¶¶ 7–8; [20-3] at 2, 4–5; [20-4] at 5, 8.[3]

---

[3] Plaintiff contends that Defendants adduce no evidence indicating that they transmitted the Account Agreements to Plaintiff. [21] at 6. Whether Defendants did so is irrelevant, however, because a "binding contract between a bank and its depositor is created by signature cards and a deposit agreement." *Kaplan v. JPMorgan Chase Bank, N.A.*, No. 14 C 5720, 2015 WL 2358240, at *5 (N.D. Ill. May 12, 2015) (quoting *Cont'l Cas. Co. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 768 N.E.2d 352, 357 (Ill. App. Ct. 2002)). Here, Plaintiff signed the signature card, which bound it to the terms of Defendant's "Account Agreement for Checking Accounts and Savings Accounts," "as well as other terms and conditions that may apply" to its account. [20] ¶ 6; [20-2].

6

Defendants included the first check on an account statement mailed to Plaintiff in November 2016. [20-1] ¶ 10; [20] ¶ 13; [20-5] at 1–2; [20-6] at 2. Plaintiff, however, admits that it did not notify Defendants of any unauthorized signatures on the account until May 2017. [20] ¶ 24. Because Plaintiff did not report that check within ninety days of receiving the account statement, it is precluded from asserting a claim against Defendants under section 4-406(d)(1) as to that check. *See Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank N.A.*, 374 F.3d 521, 528 (7th Cir. 2004) (noting that "the customer has a correlative duty . . . under section § 4–406(d) to notify the bank that unauthorized checks are being written on its account," and that violating this duty "gives the customer's bank a defense"); *Kaplan*, 2015 WL 2358240, at *7 (finding that because the plaintiff failed to notify her bank of unauthorized transactions within 30 days of receiving account statements—the time limit prescribed by the account agreements—she was precluded, under Section 4-406(d), from asserting her breach of contract claims).

Further, as to the remaining checks, Plaintiff admits that they were forged by the same wrongdoer—Ostojic. [20] ¶ 10. Thus, Section 4-406(d)(2), which bars claims against a bank for subsequent fraudulent checks signed by the same person (unless the customer gives notice of the fraud to the bank within 30 days of the original fraudulent check), precludes Plaintiff's claims against Defendants for those remaining checks. *See Travelers*, 374 F.3d at 525 (noting that Section 4-406(d)(2) "provides that the drawer of a check . . . can't complain about the check's alteration

7

'by the same wrongdoer' who had previously altered a check of the drawer") (quoting 810 ILCS 5/4-406(d)(2)).

## B. This Court Rejects Plaintiff's Contrary Arguments

Plaintiff attempts to avoid summary judgment by advancing three arguments. All are misplaced, as explained below.

Plaintiff first argues that Defendants did not exercise ordinary care in paying the thirty-nine checks, and thus cannot assert a Section 4-406 defense. *See* [21] at 2–4, 8–9. Plaintiff invokes Section 4-406(e), which provides an exception to absolute preclusion if the "customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to the loss," in which case "the loss is allocated" between the customer and the bank. 810 ILCS 5/4-406(e); *Falk*, 763 N.E.2d at 386. The UCC defines "ordinary care" as:

> [I]n the case of a person engaged in business means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this Article or Article 4.

810 ILCS 5/3-103(a)(9).

Plaintiff's reliance upon Section 4-406(e) is misplaced, however, because it fails to adduce any evidence that Defendants' conduct fell below ordinary care when they paid the thirty-nine checks. Plaintiff merely points to the deposition testimony of Jennifer Hernandez, Defendant's representative, who testified that she does not personally know for a fact whether Defendants' automatic check processing system

8

reviewed any of the checks at issue. [21] at 8–9; [20-11] at 18–19. But Hernandez' testimony does not aid Plaintiff because Plaintiff has not come forward with any evidence indicating that Defendants otherwise paid the checks under some other method, or that such method fell below the UCC's standard of "ordinary care." This flaw is fatal, because Section 4-406(e) places the burden of proof on *the customer* to show that the bank "failed to exercise ordinary care in paying the item." 810 ILCS 5/4-406(e). Plaintiff falls well short of its burden, and thus fails to raise a triable issue of fact on this score. *See Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (summary judgment appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (internal quotation omitted).

Plaintiff next argues that there remains a triable issue as to whether it exercised reasonable promptness under Section 4-406(c). [21] at 4–8. That subsection requires a customer to "exercise reasonable promptness in examining the statement" when a bank "sends or makes available" an account statement. 810 ILCS 5/4-406(c). Plaintiff contends there are genuine issues of material fact as to whether it exercised reasonable promptness in notifying Defendants because Defendants only make images of checks available online for 7 days; Plaintiff says that if Defendants left the images up longer, it might have more promptly discovered Ostojic's fraud. [21] at 5.

9

Plaintiff's argument misses the mark, however, because it concedes that Defendants mailed hard copies of checks and account statements which identified the checks by date, check number, and amount. *See* [20] ¶¶ 13–15. The UCC imposes no additional requirement upon banks to make statements available online. *See* 810 ILCS 5/4-406(a) ("The statement of account provides sufficient information if the item is described by item number, amount, and date of payment."). Defendants thus satisfied their statutory requirement to "send[] or make available account statements," *see* 810 ILCS 5/4-406(c), therein triggering Plaintiff's corollary duty to examine those statements and report any fraud within the time allotted by the Account Agreements. As explained above, Plaintiff did not timely report the fraud; therefore, Section 4-406 forecloses its claim against Defendants.

Finally, this Court addresses Plaintiff's argument—which it made in its response brief and at oral argument—that the Account Agreements do not control because Defendants have no knowledge of whether Plaintiff ever received them. *See* [21] at 6. Beyond what this Court has already addressed above, Plaintiff here undermines its own breach of contract claim, which alleges a breach of the Account Agreements. [1-1] ¶ 21. In other words, if the Account Agreements are not controlling, as Plaintiff claims in its response, then its breach of contract claim cannot demonstrate the existence of an agreement that Defendant allegedly breached. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014) (to prevail on a breach of contract claim, a plaintiff must prove the existence of a valid and enforceable contract). Plaintiff's logic fails to persuade.

## IV. Conclusion

For the reasons explained above, this Court grants Defendants' motion for summary judgment [18]. All dates and deadlines are stricken. Civil case terminated.

Dated: February 28, 2019

Entered:

_____
John Robert Blakey
United States District Judge
